IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Dorotea A. Gonzolez  :

v.   :   Civil Action: WMN 01-CV-3071

GMBC Healthcare, Inc.  :

## MEMORANDUM

Before the Court is Defendant's Motion for Summary Judgment. Paper No. 7. The motion has been fully briefed. Upon review of the pleadings and the applicable case law, the Court finds that no hearing is necessary (Local Rule 105.6) and that the motion should be granted.

## I. FACTUAL BACKGROUND

This action arises out of Plaintiff's employment as a registered nurse with Defendant, GBMC Healthcare, Inc. Defendant owns and operates a hospice located in Baltimore, Md. Plaintiff claims that Defendant terminated her from her position in retaliation for complaining about an alleged racially hostile climate at the hospice. She also claims that her termination was in violation the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (FMLA). The relevant facts, presented in the light most favorable to the Plaintiff, are as follows.

Plaintiff began her employment with Defendant in October, 1996. Plaintiff has testified that, on March 10, 2000, a incident occurred at the hospice that she believes was indicative

of a racially hostile work environment. The incident took place during a nursing meeting, in the context of a discussion of nursing assistants. According to Plaintiff, two of her co-workers, Gina Ranieri Bender and Tina Ranieri, made comments to the effect that black people "don't like to work." Pl.'s Dep. at 195. Plaintiff told them that she thought the remark was offensive, and the Ranieris responded that "we didn't mean it like that, Dorotea, don't take offense." Pl.'s Dep. at 197. Plaintiff further claims that her supervisor, Regina Bodnar, overheard the comments and took no action.

Around the same time as this meeting, Plaintiff asked for a leave of absence from her job pursuant to the provisions of the FMLA. Plaintiff submitted the required forms to the personnel office at the hospice, and requested that she be given time off from March 22, 2000 through May 18, 2000. During her leave, Plaintiff was to undergo a total abdominal hysterectomy. The hospice approved Plaintiff's request for a leave of absence, and provided her with an official "Initial Family/Medical Leave Application Approval" form outlining the terms and conditions of the Plaintiff's leave. The approval form which Plaintiff was provided stated, in part, that Plaintiff's leave was "approved ONLY until 5/18/00. Medical documentation to support the need for extended absence must be provided prior to this date!" Exh.

6 to Pl.'s Dep.

Just before her scheduled FMLA leave, Plaintiff also requested leave for an extended vacation from July 16, 2000 to August 8, 2000. The request was denied because Plaintiff did not have sufficient accrued vacation leave. Shortly after beginning her leave, Plaintiff contacted an administrative aide at the hospice, Phyllis Patterson, to request a one month extension of her FMLA leave so that she could return to Panama, her native country. This request was also turned down, both on the ground that she did not have sufficient accrued leave, and on the ground that it would cause undue staffing hardships on her unit.

After Plaintiff's operation, she experienced difficulty in fully recovering from the surgery. As a result, Plaintiff provided medical documentation to Defendant regarding her slow recovery, and was granted an extra week of medical leave until May 26, 2000. Plaintiff was in contact with the Director of Employee Health at the hospice, Joyce Russell, regarding this extension. In a May 19, 2000 telephone conversation, Russell reminded Plaintiff of the procedures to follow should the need for any further extension of Plaintiff's leave be required.

Shortly before Plaintiff's new return-to-work date, she again contacted Russell in an attempt to extend her leave for an additional two weeks. Russell advised Plaintiff that pursuant to

company policy, and based on her previous conversation with Plaintiff, absent additional medical documentation regarding her condition, Plaintiff would be expected to return to work on May 26, 2000. Plaintiff acknowledged that she would be at work as scheduled on May 26, 2000.

On May 26, however, Plaintiff did not report to work. Plaintiff asserts that this was the result of a conversation she had with one of the shift nurses at about 2 o'clock in the morning of May 26, in which she was advised that her name had been crossed off the schedule until June 14, 2000. Later that morning, when the Office of Employee Health opened, Plaintiff contacted Russell and, according to Plaintiff, Russell opined that "maybe they're giving you time to feel better or to just take care of yourself." Pl.'s Dep. at 116-17. Plaintiff also attempted to call Patterson, but was told that she was unavailable. Plaintiff did not attempt to contact anyone with direct supervisory authority over her regarding her absence.

Plaintiff finally reached Patterson on June 1, 2000. According to Plaintiff, Patterson told her that the scheduling change "was a mistake on [Defendant's] side," that Patterson would "deal with it from [her] end" and that Plaintiff should go to see her doctor and take care of herself. Pl.'s Dep. at 120. On that same date, however, Plaintiff received a letter from

Joyce Russell, dated May 30, 2000, stating that she was concerned that Plaintiff did not return to work as scheduled on May 26, and that no one recalled speaking with her on that date. Russell again reminded Plaintiff of the need for adequate medical documentation to remain out on FMLA, and instructed Plaintiff to "contact your supervisor at Hospice immediately to inform them of your anticipated return to work date and forward all relevant medical documentation to Employee Health." Pl.'s Exh. 9.

The record provides no indication that Plaintiff contacted her supervisor in response to this letter. Instead, Plaintiff states that she scheduled a follow-up visit with her physician, Dr. Lanneau, for June 6, 2000. At that follow-up visit, Dr. Lanneau found nothing abnormal in Plaintiff's recovery, but referred her for some additional testing as a precaution. Significantly, he found no reason to certify any extension of Plaintiff's FMLA leave period beyond May 26, 2000. See Pl.'s Exh. 10 (physician's notes).

On June 7, 2000, Plaintiff faxed to Russell a "GBMC Certificate of Healthcare" form prepared and signed by Dr. Lanneau. It was apparent that the form had been completed at a previous visit but had been altered to make it appear that it was completed on June 6, 2000. The form faxed to Russell also showed an "Estimated date of return to work" as "6-14-00," although this

date was also plainly altered. In subsequent conversations with Russell, Plaintiff acknowledged that she had altered the return to work date from "5-26-00" to "6-14-00."

Plaintiff seeks to explain her alteration of the Certificate by stating that, when she went to her doctor on June 6, 2000, she took with her a form that had been previously completed. Although she admits that her "action in filling in the 'estimated date of return to work' herself" was "unorthodox," she claims that she did so at the direction of her doctor who "had the habit of asking her when she was expected back at work, and telling her to put in the date accordingly." Pl.'s Opp. at 11. Plaintiff claims that she "believed that she was acting properly when she wrote 6-14-00 over the old date of 5-26-00." Id.

After receiving the faxed form from Plaintiff, Russell contacted Plaintiff's physician's office to inquire further as to Plaintiff's ability to return to work. Dr. Lanneau stated that he had seen Plaintiff on June 6, 2000, and that, while he had ordered some additional tests, Plaintiff was in no way disabled from work. Russell also had a telephone conversation with Plaintiff on June 8, 2000. Plaintiff acknowledged that she had altered the return-to-work date, but claimed that she did so because she did not have a blank form with her.

Plaintiff was terminated on June 9, 2000 by Catherine Boyne,

6

the president of the hospice. As the reason for Plaintiff's termination, Defendant points to Plaintiff's submission of the altered medical documents and her failure to show up as scheduled for her agreed-upon work shifts. Plaintiff filed the instant action shortly after her termination. Defendant has moved for summary judgment as to both the FMLA and the Title VII retaliation claims.

## II. LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact becomes a genuine issue "if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if, when applied to the substantive law, it affects the outcome of the litigation. Id. Unsupported speculation is insufficient to defeat a motion for summary judgment. Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987)(citing Ash v. United Parcel Service, Inc., 800 F.2d 409, 411-12 (4th Cir. 1986)).

Moreover, the mere existence of some factual dispute is insufficient to defeat a motion for summary judgment; there must

be a genuine issue of material fact. <u>Anderson</u>, 477 U.S. at 247-48. And, while in considering a motion for summary judgment in a Title VII case the "trial court must take special care, because motive is often an issue," <u>Douglas v. PHH FleetAmerica Corp.</u>, 832 F.Supp. 1002 (D. Md. 1993)(citing <u>Ballinger v. North Carolina Agric. Extension Serv.</u>, 815 F.2d 1001, 1005 (4th Cir. 1987)), "self-serving opinions or speculation" are not enough to allow a party to survive a motion for summary judgment. <u>McCain v. Waste Management, Inc.</u>, 115 F.Supp.2d 568, 574 (D. Md. 2000). Finally, in assessing a motion for summary judgment, the Court must view all the evidence and all justifiable inferences in the light most favorable to the party opposing the motion. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)(<u>per curiam</u>).

## III. DISCUSSION

The FMLA provides in relevant part, that "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise or attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a). One of the rights provided by the Act is "to be restored by the employer to the position of employment held by the employee when the leave commenced." 29 U.S.C. § 2614(a)(1)(A). The Act also provides, however, that "[n]othing in this section shall be construed to entitle any restored employee to . . . any right, benefit, or

8

position of employment other than any other right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3).

Generally, an eligible employee establishes liability under the FMLA by showing that he or she was entitled to leave and that this entitlement was interfered with by his or her employer. McClain v. Southwest Steel Corp., Inc., 940 F. Supp. 295, 299 (N.D. Okla. 1996). The Act does not confer an employee with absolute immunity from all employment actions. An employee who takes medical leave is still subject to being lawfully discharged when the discharge is based on poor performance and not because of the medical absence or disability. See, e.g., Clay v. Chicago Dept. of Health, 143 F.3d 1092, 1094 (7th Cir. 1998). Further, courts have held that an employee has no greater rights of reinstatement than if she had remained at work during the period of leave, when, had she remained, the employer could have validly terminated her. Hubbard v. Blue Cross Blue Shield, 1 F.Supp.2d 867, 875 (N.D. Ill. 1998).

In the present case, Defendant freely granted Plaintiff leave under the FMLA. The record demonstrates that Defendant in no way interfered with Plaintiff's rights to take leave under the FMLA, and clearly expected Plaintiff to return to work and resume her pre-leave job duties. Her termination was not the result of

the leave or her medical condition; instead, Plaintiff was ultimately fired for submitting an admittedly altered medical certificate in an attempt to support her extended absence from work. Her termination was consistent with Defendant's policy that "falsification of medical certification records or other false information supplied by the employee to obtain approval for leave will result in disciplinary action up to and including discharge." GBMC Policy Manual, Policy 737 at V.A.4. Furthermore, the record demonstrates that Defendant had terminated other employees in the past for falsification of documents, including Plaintiff's former supervisor at the hospice, Evonne Kaniecki.

Plaintiff's proffered explanation of her conduct, even if fully embraced by the Court, would not lead the Court to conclude that there has been a violation of the FMLA. Plaintiff may have sincerely believed that it was proper for her to alter the certificate and it may have been a mistake or a poor management decision for Defendant to not have accepted that explanation at face value.[1] There is, however, nothing in the record to suggest that this was not the actual reason for Plaintiff's termination.

---

[1] While Plaintiff is adamant that she never intended to deceive anyone and that she "freely admitted" that she had changed the dates on the certificate, Defendant notes that Plaintiff did not admit to altering the document until she was questioned about it by Russell.

The issue for the Court is not "whether the employer's reasons for a decision are '<u>right</u> but whether the employer's description of its reasons is <u>honest</u>.'" <u>Kariotis v. Navistar Intern. Trans. Corp.</u>, 131 F.3d 672, 677 (7th Cir. 1997)(quoting <u>Gustovich v. AT & T Communications, Inc.</u>, 972 F.2d 845, 848 (7th Cir. 1992))(emphasis supplied in <u>Gustovich</u>).  "'[A] reason honestly described but poorly founded is not a pretext as that term is used in the law of discrimination.'" <u>Kariotis</u>, 131 F.3d at 677 (quoting <u>Pollard v. Rea Magnet Wire Co., Inc.</u> 824 F.2d 557, 559 (7th Cir. 1987)).

The record reveals an increasing level of frustration on the part of Russell and Patterson with Plaintiff's continuing inability to produce appropriate medical documentation of her continuing disability.  The need for this documentation was repeatedly relayed to Plaintiff.  On the day after her doctor told her there was no justification for extending her leave beyond May 26, Plaintiff faxed to her employer a document that made it appear that he had recommended that Plaintiff remain on leave until June 14.  As it had done with several other employees, Defendant terminated Plaintiff for falsifying documents.  Plaintiff has produced nothing that would lead the Court to conclude that this reason was pretextual.

Plaintiff's Title VII retaliation claim must fail under the

11

same line of reasoning.  Under the now-familiar shifting burden of proof scheme of McDonnell Douglas v. Green, 411 U.S. 792 (1973), the plaintiff has the initial burden of establishing a prima facie case.  Once the plaintiff meets that burden, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the actions complained of by the plaintiff.  McCain v. Waste Management, Inc., 115 F.Supp.2d 568, 574 (4th Cir. 2000)(citing Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996)).  If the defendant is able to offer such an explanation, the burden then shifts back to the plaintiff to show that the defendant's explanation for the employment action in dispute is but a pretext to disguise an unlawful motive such as racial discrimination or retaliation.  Id.  Although the burden of production shifts back and forth between plaintiff and defendant under the McDonnell Douglas framework, the burden of persuasion always remains with the Plaintiff.  Marrs v. Marriot Corp., 830 F.Supp. 274 (D. Md. 1992)(quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

Assuming Plaintiff would be able to establish a prima facie case of retaliation, Defendant's proffered explanation for Plaintiff's termination defeats Plaintiff's Title VII claim, just as it does Plaintiff's claim under the FMLA.  It is also

noteworthy as to this claim that the individual who ultimately decided to terminate Plaintiff, Catherine Boyne, had no knowledge that Plaintiff had objected to any racial comments. See Boyne Aff. at ¶ 5.

## IV. CONCLUSION

For the reasons outlined herein, Defendant's motion for summary judgment will be granted. A separate order will issue.

                                           _/s/ William M. Nickerson_
                                           William M. Nickerson
                                           Senior United States District Judge

Dated: December 12, 2002